And we have today for the appellant, I'm having trouble with reading. The father filed a petition for changing the child's name. His attorney at that time was Judy Brow. This was one of her final cases before she retired. In that petition for changing name, she pled in paragraph number 9 that it is in the best interest of the minor child that he bear his father's surname. And that was the petition upon which the court proceeded in August of 2013 and had hearing on. Procedurally, the case law deals with the issue of what standard is used in this particular case. This is a de novo review because we're talking about the determination of what, not only what statute, but also the burden of proof associated with the correct statute for purposes of deciding what the name should be for the minor child. The case law started in 1984 with the Supreme Court of Illinois case called Presson v. Presson. In that case, which was a divorce case, the Supreme Court of Illinois laid out the standard as in the best interest of the minor child for purposes of a name change. In 1985, however, section 21-101 of the code, specifically 735 ILCS 521, 5 slash 21-101, changed the dynamics for purposes of name change in parentage cases. And what that, in parentage cases initiated by the custodial parent, what that change in the statute did the year after Presson was say that by clear and convincing evidence, a custodial parent has the burden of asking them to name change the initiator. Now, after... You said that the only issue is which name this child's going to bear. Right. It seems that there's a very important issue, and that is which law applies. Right. What's your position? My position is that the court should not have used 21-101. The court should have used 601-602 for purposes of best interest under the IMDMA. Okay. But I think it's important to go through the history a little bit to understand how that came about. So that's why you're talking about 21-... Right. 21-101 was used by Judge Geary in this particular case. So the fact that he used the wrong statute, does that make this error, this order error? Yes, because the standard under 21-101, by clear and convincing evidence, standard under best interest would have placed them on an equal footing at the time of the hearing. Because this was an initial petition for parentage, and this was an incident to custody on the original petition for parentage. This petition was filed May 14, 2013, less than a month after the parties had entered into an agreed order giving them joint custody with the mother as primary custodian. So this came on the heels of the initial petition for parentage case. And that's what the subsequent cases speak to. After the statute was changed in 1985, there were three other opinions that directly relate to this issue. And the first one after that is Sullivan v. McGaugh, which I cited in my brief. This is a 1985 opinion. And this one specifically deals with the test applied to establish best interests of child in determining whether to change the child's surname is identical to the standard applied in awarding custody pursuant to divorce. This was a parentage case, the Sullivan v. McGaugh case. Just like our case, it was parentage, and the court says he applied the same standard under 602. In Sullivan v. McGaugh, what the court ultimately concluded is use that standard, not 21-101. And for purposes of this parentage case, the trial court erred in ordering the child's name to be changed to the father's surname without using the best interest factors. What the trial court's ultimate decision was isn't really important for purposes of Sullivan v. McGaugh. It's that they used the wrong – is that they didn't apply the standards set forth in 602. There was no finding of fact with respect to best interest. So Sullivan v. McGaugh's key to establishing the fact in the first place that in a parentage case, a noncustodial parent, which was the father in that case, had to show best interest. The next case that came along was a 1998 case called Henry Merritt v. Sharnagorsky. And keeping in mind what Sullivan said about the fact that the standard is the same in parentage and divorce cases for purposes of the noncustodial parent's burden with regard to the burden of proof and that is in the best interest of the child, Sharnagorsky deals with the ex-husband as the minor child's noncustodial parent didn't have standing to petition under 21-101. What had happened in this case is the ex-husband had said, I want to change the child's surname so that – and dealt with that in some detail. But he – the husband is the one who filed the petition. He was also the noncustodial parent following the divorce. And he had filed his petition under 21-101 and the court said, no, can't do that. You're using the wrong statute, 21-101. Sharnagorsky doesn't end there, though. Sharnagorsky also says with respect to whether the noncustodial father could meet his standard under 602, they said we don't have to reach that issue. And on page 242 in the Elementary Decisions Report, 707-87, the court says, we note that because the Supreme Court has ruled that changing of a child's name is a matter incident to custody, it would appear that a dispute as to the child's name could also be resolved in the custody proceeding. Although we need not resolve the issue at this time, that's because he was filing it under 21-101, we believe that based on precedent, a parent could bring a petition to change his child's name under the court's authority regarding custody issues in the IMDMA. And so they didn't have to reach that issue, but they do specifically state what the standard is for a noncustodial parent. That is 602 best interests, not 21-101. And then the third case, and this is the most important case of all that brings this issue home, is Rogers v. Wright. This is a Fourth District opinion handed down in February of 2006. And in Rogers v. Wright, everybody proceeded under the wrong statute, 21-101. And the Rogers court says, no, you can't do that. You have to file it under 602 best interests when you're the noncustodial parent. Like our case in Rogers v. Wright, it was the parent's case. It was the father seeking to change the child's name. Like our case, in this particular case, the case proceeded under 21-101 instead of under 602. And like our case, in this particular case, everybody proceeded under that statute, and the court said, reverse. You've got to send it back, and you need to resolve this issue. And this is the very last sentence of Rogers v. Wright. That court, as in the parent's court, not the miscellaneous remedies court that had been filed under, that court should resolve this issue and issue incident to custody. So it wasn't just that they reversed. They're saying you have to go back to the parentage court and have the parentage court make a proper decision under 602 best interests. What about the argument that you waived, this argument that you're presenting today? Two things. First, this case specifically, but also importantly, and I put this in my replay brief, is pleadings are to be liberally construed. And in the petition for name change that Ms. Ralph filed on behalf of my client, Richard Weber, in the petition, she specifically pleads best interests. And I would submit that that is at least preserving the issue with respect to the 602 standard of best interests with respect to the child. But she also pleads the specific statute. She does. She cites 21-101. But a liberal pleading that to be liberally construed, to work toward the best interests of the child. This isn't about dad. This isn't about mom. This is working toward what's in the best interests of the child. I submit that that issue was preserved under the petition, paragraph 9. In addition, Rogers v. Wright, I think, addresses this issue head on. Because Rogers v. Wright says that here the name – and I'm quoting from the case – here the name change petition was clearly resolved under the first means, the code. They're talking about 21-101. And then that in conjunction with the next paragraph where they say section 21-102, which is part of 21-101, use of the parent having the legal custody implies no custodial dispute over the name change. Then the last sentence, the very last sentence of the case, that court, as in the parentage court, should resolve this issue and issue incident to custody. What Rogers v. Wright is saying is it's got to go back and be resolved by the parentage court in the parentage case. In this particular case, what had happened was the petition had been filed under – in Miscellaneous Remedies Court. And that was one of the arguments that was made in response to the brief in this case is that, well, wait a minute, because that case, it was filed in Miscellaneous Remedies Court. That court didn't have jurisdiction. Now, jurisdiction is not dependent upon where the circuit clerk's office pigeonholes that particular case. It's for administrative convenience only. It doesn't deprive the court of any jurisdiction. Illinois has courts of general jurisdiction, etc., etc. And that's all in my replay brief. So Rogers v. Wright, I think, is a clear indication that no matter what the statute is filed under, you have to proceed under the correct statute even if everyone makes the mistake of applying the wrong statute. And I think this case is significant because it's consistent with the prior cases that speak to the issue of what statute should apply in any particular case. If it's the custodial parent, that person has to proceed under 21-101. Why? And this goes into the logistics of the whole thing. A typical scenario in a parentage case is, like I said a minute ago, the hospital hands the paperwork to the mother. She fills it out. She picks whatever names that she wants. The father, then, is entitled to seek a petition and then be on level playing field under 602 and have the court make a decision. And this all underlies the entire premise of both the Illinois Parent and Dissolution Marriage Act and the Parent Act of 1984. And that is when you have two people who have a child together who are not married, you cannot trust those two to make decisions on their own what's in the best interest of the child. That's where the court comes in. That's the whole point of having the court make decisions with regard to custody and all elements of custody, to include name changes. And the one case speaks to the issue I quoted in my brief. A name change is a very important decision associated with custody. It is an element of custody. So the court having said that, then, so the mother fills out the paperwork. She turns it in. They're not going to give the paperwork to the father if they're not married, especially in this particular, like in this particular case, when his name isn't even on the birth certificate. But that was because he didn't show up. I mean, there are some allegations that it wasn't that he was unadvised of it. But is it important at all that he denied parentage in a pleading? He signed a blanket denial of parentage in the beginning. But keep in mind, that was after he had already turned in the paperwork associated with admitting he was the father of the child because the mother, by her testament. So are we to ignore that? Well, I think the mother, by her own testament, he was definitely surprised when he scanned it or he found it. Wait a minute, I didn't know I had denied this. And wasn't it determined by DNA? Well, looking at the other facts, though, they had submitted, they had both signed an affidavit stating that he was the father of the child. So he admitted he was the father promptly after the birth of the child, and the DNA was concluded. So, but I don't think, I don't think that's significant for purposes of, one, figuring out what statute to proceed under, or even two, with respect to best interests of the child. Any reasonable individual would want to make sure that this child is their child before proceeding with it. That doesn't mean you're not going to blow them any less once they get to that point. It's just a question of making sure initially that that is, you know, that is blood relative, that that is your actual child. So, and I don't think that that necessarily should be a strike against him with respect to best interests in that regard. Are you asking, are you asking the court here to reverse everything outright and just remand this back for a new trial under the correct statute? Yes, that's exactly what I'm asking for. And I think Rogers v. Wright supports that. In conjunction with the previous case law, that speaks to the issue of what the proper standard should be. With respect to the other issue that I had raised, and that is that in the alternative, oh, before I even get off that point, there is one other issue, and that is there was never an objection made based on standing with respect to the mother with regard to all of this. And the significance of that is that points us in the direction of applying the right statute, because if she had objected to standing, if it had been a situation… You'll have the opportunity to say what you think. Thank you. You may proceed when you're ready to, excuse me. Thank you, Your Honour. May it please the court. My name is Stephanie Santelli-Guzzi, and I represent the affilee, Lauren McManamy. On December 20th, 2011, Lauren gave birth to a little baby boy.  On December 21st, she and she alone named the child Liam, an Irish name that she had fallen in love with, Thomas, her first name of her father, and McManamy, both her last name and her father's last name. She did this because she wanted to memorialize her father. The father of Mr. Groninger's client was not present at the time the child was named. And, yes, they had previously discussed naming, but he did nothing to preserve his right to file, or he did nothing to preserve his right to name this child. On March 2nd, 2012, Lauren filed a petition to establish a parent-child relationship and also so that she could receive the correct amount of child support. The respondent appellant had been paying child support, but he had not been paying the correct amount. On April 16th, 2012, and I think that Your Honour is correct that it is very important that he filed a pleading denying that he was the father of this child. If we are to follow Mr. Groninger's line of thought, we will have children leaving the hospital that are not named. And that is not what happens in our society. I mean, when, over in England, they gave birth to a royal child and it was odd that the child was not named for an entire week. Here, this child was named the next day. Are we really to think that this child should go three months without being named when he files an answer and then denies paternity? Are we to wait 16 months to the point where he's found to be the father? And then, in May of 2013, decides that he's finally going to file a petition for a name change. Or, as Mr. Groninger argued in his brief, a petition to determine the name of the minor child. Let me ask you a question. Do you believe that the court followed the wrong statute? I do not. And the reason I do not is... What's your authority for that? ...is the opponent's brief in that they, first, they cited that statute. They cited 21-101. And then, also, they looked at the case law. The case law that the... How do you distinguish the right case? Thank you, Your Honor. I would distinguish the right case because that is a case that was filed in the wrong courtroom before the wrong judge. This case has also examined Patlip, which also was a case where an order of protection was heard before the wrong judge and not in the courtroom where the judge was hearing custody. So, right was not heard before the right judge, and it needed to be heard before the judge who heard the custody issue. You agree that Illinois has courts of general jurisdiction, right? Yes, Your Honor. So, in right, whether it was before the right judge or the wrong judge, what I'm asking is do you think the right statute was complied with? Because when you talk about denying parentage and filing pleadings, whether you're under 602 or whether you're under the other statute, 21-101, those are the kinds of arguments you're going to make about best interests of the child. Those are factual arguments, aren't they? Right, and they're also very similar. They're very similar. I agree with you. But each statute gives the parties the ability to argue the kinds of facts that you're arguing. My question is, as we look at this case, did the judge apply the right statute? I mean, the case law says this is an issue of custody. Do you believe that? I would draw the court's attention to the Schaefer, which is a first district case. And in the Schaefer case, the parents were both married, and the father filed an injunction enjoining the mother from using the new stepfather's name. And in that court, they used both 602 and 101. So I don't think that – I think that these statutes are so similar that the result is going to be the same irregardless of which statute you use. I would also draw the court's attention to the Madsen case, which is a second district case in 1993, where it said these parents were never married, and the parties agreed that the name of the child was going to be whatever it was. And then the father came in and said, well, I don't want the child's name – I'm sorry, the mother came in and said, I don't want the child's – I want to change the child's name. And the court applied 602, and the appellate court held, no, I'm sorry, you're supposed to apply 21-101. Because she was the custodial parent, wasn't she? She was in that case, yes. Right, so that's easy. And you're right, the outcome may be the same, but do you think that as an appellate court that we have an obligation to make sure the right statute's being used? The right statute and the burden of proof. And the burden of proof. And I would also argue that that objection was not properly preserved on appeal. They never brought it to the trial court's attention, hey, we should be applying this other statute. They never objected to it at trial. And, in fact, the trial court was following the statute that was pled in the respondent's pleadings. So I think that the appellate court should uphold it. Do you think that 21-101 imposes a greater burden on the father? Do you think there's a change in the burden, or do you think they're the same burdens between the two statutes? Because these statutes are, I would say no. And the reason is because the factors of the statutes are so close together, I don't see how if you are a judge and you're sitting there and you're deciding best interest, how that puts someone at a disadvantage. I could see the court upholding and wanting to maintain the ties of the child to the father, to the family. But I don't believe that either one of these statutes necessarily splits that page in that fashion. I think it's important to note that the case law did change with the 21-101 being, with the urgent proof being changed. And that happened in April of 1985. So I think that the court needs to consider the Delato v. Groff case, wherein the parents were never married, there was no mention of custody, and the father does have visitation. This was also a fraternity case. Here the trial court applied a completely incorrect burden of proof, wherein the court held that normally in the United States, children bear the name of their father, which was the previous presumption of naming a child. And the court said that the respondent had to show that the name change would not be changed because it would be harmful. But this court said that that was not the case, even though the court applied the wrong burden of proof, that what should have been applied was 21-101 and its four factors. And it just upheld the court adding the father's last name as a middle name to the trial. And so we would ask of the trial court that Your Honor uphold the ruling of the trial court. And so let me see if I understand. If we find that the evidence in the record would be sufficient to support the ruling even under a different statute, we should affirm? Yes, Your Honor. Because that's what the Delato v. Groff case holds. But what you're asking this court to do then is reweigh the evidence, right? It's no different than in the Wright case. In the Wright case, they said, well, you applied the wrong statute, so we're going to remand it back. It's an exact opposite case. Thank you. You don't have anything else to say? No, thank you. Do you have some funnels? The standard under 21-101 is much more onerous than the standard under 602. The very first sentence above the four factors that the court is supposed to consider in 21-101 says, an order shall be entered as to a minor only if the court finds by clear and convincing evidence that the change is necessary to serve the best interest of the child. That is much more strict than the standards under 602, which is simply just the best interest of the child. There are nine factors under 602. There's only four under 21-101. So it is different facts, too, that are also taken into consideration. The two statutes are not – they are similar, but there are some significant differences between the two. Secondly, we're not proposing that the child not be named at the hospital. We're simply saying that the mother's unilateral choice in this particular case of what the names are going to be – and she picked all three, first, middle, and last. It doesn't mean that that is the end all with respect to what ultimately a judge making a decision what's in the best interest of the child should decide. Her testimony in the stand indicates that she believes she simply picks them. That's in the best interest of the child. The end. No further discussion. And when she was asked – and this is on – I'm sorry I don't have the – it's page 48 of the transcript. I don't have the court site. But she said – specifically said in her – and why don't you want the name changed? Do you have any – can you comment on why you do not want the child's name changed, whoever? Answer. I just believe that it was my right when I had Liam and I made that choice. It was a choice I made, and I didn't take it lightly. I put a lot of thought into it, and I would really like him to carry on our name, and I just don't understand why, why at this point I lose that ability to make that choice. What she's misunderstanding is that neither parent automatically gets to decide what's in the best interest of the child. And that's true in both the Parentage Act and the IMDMA. And to allow simply a parent to make that decision unilaterally is to usurp what really is the court's prerogative to decide, hey, we can't trust these two to make independent decisions about best interest. Therefore, the court ultimately gets to decide that issue. That's why it's so critical that the correct statute be applied. As far as the facts that – oh, and as far as the reason why she wanted the three names, she enumerated that in her testimony. Liam is an Irish name that I just kind of fell in love with. That was why she picked Liam. And Thomas is my father's name. His name is Thomas Lee McManaman. So I named him after my father. He just passed away, and so we were all well excited about a boy carrying the name because I have two sisters. So Rich and I are pairing the same situation as far as carrying on the last name. Those are the motivations as to why she picked that. But why is that any more assuming or presumptive than the father's motivations with respect to picking just one of those three names that he's asking to do in this particular case? As far as the facts that weigh into a decision about what – whether it's against the manifest way to the evidence, you have the following facts. Father went to all parenting classes. He exercised all of his visitation. He paid child support even before the dollar amount was even set. He was there at the birth. He agreed to parentage in a summary fashion. He always contested the surname. He always indicated he wanted the name Weber. And so those are factors that weigh in favor of he's a good father. He's an involved parent. He should at least have a hearing under the proper statute as to – on a level playing field about whether or not and what names the child should be given. Mr. Gruninger, what do you say about the case law that says that if you invite an error, then you have to live with it? Basically the court did what you asked it to do. It didn't arrive at the outcome you wanted. But was it supposed to – so Fante choose the other statute? Well, in this particular case, it wasn't that they presented the facts. They presented that the court misinterpreted the facts. It was a misapplication of the correct law. But you invited that. He did put that in his petition under 21-101. Wouldn't you then at least concede that he invited it? He definitely took some step to invite the wrong statute, even though he put it in his pleading that it was a best interest standard. I would point to Rogers v. Wright, though, that says you're talking about a misapplication of whatever law that should be applied in any particular circumstances as opposed to a misapplication of the facts toward the law, which is the alternative to that. So I would – my argument would be that Rogers v. Wright supports the fact that even when everybody perceives under the wrong statute, even when an error is made in that regard, that the court still has an obligation to apply the correct law. They reversed the whole entity in that case. Thank you. Thank you. Thank you both for your briefs and your arguments. Take the matter under advisement.